UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VANCE S. ADDUCI,

        Plaintiff,

        v.                                      Case No. 21-cv-0974-bhl

WISCONSIN DEPARTMENT OF CORRECTIONS, et al.,

        Defendants.

## SCREENING ORDER

    Plaintiff Vance Adduci, who is currently serving a state prison sentence at the Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On October 7, 2021, the Court screened the complaint and gave Adduci the opportunity to file an amended complaint. Dkt. No. 12. On October 12, 2021, Adduci filed a motion for leave to file an amended complaint and attached a proposed amended complaint. Dkt. No. 13. The Court will deny Adduci's motion as unnecessary because the Court already granted him leave to file an amended complaint. The Clerk's Office will docket the proposed amended complaint as the operative complaint, and the Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

    As the Court previously explained to Adduci, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

Adduci explains that he has served more than 23 years of a 33-year sentence following his conviction for first- and second-degree sexual assault of a child. On January 27, 2020, he was enrolled in Sex Offender Treatment-4, a two-year program. Adduci asserts that the parole commission informed him that he "would probably be released, if [he] completed this final program." On April 12, 2021, Adduci was removed from the program and informed that he would be moved to a different housing unit. According to Adduci, Defendants Christopher Hunt and Laura Van Linn told him that he "was being terminated for a side-assignment [he] had received about a month ago for arguing. [He] had another episode the day before being terminated." Adduci explains he had already completed more than 14 months of the 2-year program. Dkt. No. 13-1 at 1-3.

Adduci asserts that he suffers from borderline personality disorder, depression, and PTSD and has a history of suicide attempts. As such, after Defendants informed him of his termination from the program, they asked him if he was having any suicidal thoughts. Adduci does not include his response in these allegations. According to Adduci, after leaving the group room, his mental

2

health deteriorated rapidly, and he went into an "emotional storm." Adduci asserts that Hunt "witnessed it," but he does not explain how he was behaving or whether he communicated with Hunt. Adduci states that, within five hours, he was being taken to the hospital for a self-inflicted wound. He was allegedly admitted overnight for significant blood loss. When he arrived back at his institution, he was placed in observation for five days. Dkt. No. 1 at 2-3.

## THE COURT'S ANALYSIS

Adduci fails to state a claim based on Defendants allegedly removing him from the sexual offender treatment program based on his outbursts. He explains that this was the last program he needed before being considered for parole and that the parole commission told him that he would "probably" be released if he completed the program. But Defendants' removal of Adduci from a treatment program that may have improved his chances of being released on parole does not state a claim for violation of his due process rights under the Fourteenth Amendment because Adduci has no liberty interest in either the treatment program or in discretionary parole. *See Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000) (holding that "admission to [treatment] programs cannot be described as a liberty or property interest"); *see Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001) (explaining that prisoners do not have liberty or property interests in a parole system that is entirely discretionary). Given that Adduci had no liberty or property interest in remaining in the program or in being released on parole, Defendants were free to use whatever procedures they wanted to dismiss him from the program. *See, e.g., Montgomery*, 262 F.3d at 644.

The Court explained in its original screening order why Adduci fails to state a claim under the Eighth Amendment based on his removal from the program. *See* Dkt. No. 12 at 4-5. Even assuming Adduci's mental health conditions constitute an objectively serious condition, the Court cannot reasonably infer that Defendants demonstrated deliberate indifference to those conditions

3

when they removed him from the program. Adduci is receiving extensive treatment for his conditions, including counseling and medication, and, in any event, it is clear that Adduci wants to participate in the program not for its treatment value but because it may qualify him for early release.

Adduci also fails to state a claim based on allegations that, five hours after he moved to his new housing unit, he seriously injured himself when he tried to commit suicide. Adduci asserts that after Hunt and Van Linn informed him that he would be removed from the program, they asked him if he was having any suicidal thoughts. Adduci does not allege that he offered any verbal response to them, but he asserts that his metal state began to deteriorate *after* he was moved to his new unit. He also states that Hunt witnessed his "emotional storm," without clarifying what that means. There is no suggestion that Adduci informed Hunt that he intended to harm himself or that Hunt knew that Adduci might imminently take his own life. In fact, Adduci notes that he was on his unit for five hours before harming himself, and there is no allegation that, after his initial transfer, he had any contact with Defendants. In short, even construing Adduci's allegations broadly, the Court cannot reasonably infer that Defendants knew Adduci posed a significant threat of harm to himself. Defendants cannot be deliberately indifferent to a risk they did not know about. *See Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (to be liable, a "defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life").

Finally, Adduci fails to state a claim under the Americans with Disabilities Act (ADA). Setting aside "the thorny question of sovereign immunity" for now, to state a claim under the ADA, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability.

*Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Adduci alleges that, as a result of his mental health conditions, he has trouble controlling his temper and has "outbursts." It is questionable whether his alleged conditions constitute a disability that limits one or more "major life activity" such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *See* 42 U.S.C. §12102(2)(A). Further, although sexual treatment programs may be considered a program or activity, Adduci explains that he has been admitted to and completed many other programs, that Defendants were fully aware of his conditions when they admitted him to this program, and that he was permitted to participate in this program for fourteen months before multiple outbursts led to him being removed. Adduci's removal from a single program for repeated misconduct is insufficient to support his assertion that was denied access to his institution's treatment programs.

**IT IS THEREFORE ORDERED** that Adduci's motion for leave to file an amended complaint (Dkt. No. 13) is **DENIED as unnecessary**. The Clerk's Office is directed to file Adduci's proposed amended complaint (Dkt. No. 13-1) as the operative complaint.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim**.**

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 19, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.